IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| APPLICATION AND AFFIDAVIT OF THE | ) | |
| UNITED STATES OF AMERICA FOR A | ) | |
| SEARCH WARRANT OF 1835 EAST 34TH | ) | Case No. 1:22-mj-00082 |
| STREET, ERIE, PENNSYLVANIA | ) | **[UNDER SEAL**] |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION**
**UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE**

I, Valentino Cuba, being duly sworn, hereby depose and state as follows:

**I.  INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed since 2018.  I am currently assigned to the Pittsburgh Field Office, Erie Resident Agency as the Coordinator for the FBI's Erie Area Gang Law Enforcement (EAGLE) task force.  As part of my duties, I have been involved in the investigation of suspected violations of Title 18 United States Code, Section 924 (c) (possessing a firearm in furtherance of drug trafficking), Title 21, United States Code, Sections 841(a)(1) (manufacturing, distribution, or possession with the intent to manufacture or distribute a controlled substance), and 846 (drug conspiracy).  The EAGLE Task Force is a multi-agency task force made of agents and officers from the Oil City of Police, Franklin Police, Titusville Police, Pennsylvania State Police and the Erie Police Department which investigates violent crime and drug matters.

2.      Your Affiant is an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) and is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

3.      Your Affiant has participated in numerous investigations involving narcotics activities.  These investigations have resulted in the arrests of individuals who have smuggled, received and distributed controlled substances, including cocaine, crack cocaine, heroin and marijuana, as well as the seizure of controlled substances and the proceeds of the sale of those controlled substances.  In addition, I have conducted investigations concerning the concealment of narcotics proceeds, including assets and monies, and the identification of co-conspirators through the use of drug ledgers, telephone records and bills, photographs and financial records.

4.      Your Affiant has been trained in the methods utilized to investigate the interception of wire and electronic communications and I am familiar with the methods in which narcotics traffickers conduct their business, including, but not limited to, their methods of importing and distributing narcotics, their use of cellular telephones and other electronic devices and their use of numeric codes and code words to conduct their narcotics transactions.

5.      Your affiant has made numerous arrests or assisted in the arrest of people who transport, traffic and smuggle narcotics and drug proceeds. Through training and previous investigations, your Affiant has learned that drug dealers often use multiple cellular telephones to conduct drug transactions, often having another person obtain the cellular telephone or using pre-paid cellular telephones to avoid being identified as the owner of a particular cellular telephone.

6.      This affidavit is made in support of an application under Rule 41 of Federal Rules of Criminal Procedure, for a warrant to search for and seize evidence, instrumentalities, contraband, and fruits of violations of Title 21, United States Code, Sections 841(a)(1) (manufacturing, distribution, or possession with the intent to manufacture or distribute a

2

controlled substance), and 846 (drug conspiracy), committed by Supreme WILLIAMS, and other known and unknown persons, from 1835 East 34th Street, Erie, Pennsylvania ("**Target Location**").

## II.   TRAINING AND EXPERIENCE REGARDING DRUG TRAFFICKING OFFENSES

7.     The facts set forth in this affidavit are based on my personal knowledge, knowledge obtained during my participation in this investigation, knowledge obtained from other individuals, review of records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience.  Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, this affidavit does not set forth each and every fact learned by me during the course of this investigation.

8.     In a substantial number of residential search warrants executed in connection with the drug investigations in which I and fellow investigators from numerous departments have been involved, the following kinds of drug-related evidence have typically been recovered from the residences of drug-traffickers:

a.   Controlled substances, such as marijuana, heroin, fentanyl, crack cocaine, powder cocaine and methamphetamine;

b.   Paraphernalia for packaging, processing, diluting, weighing, and distributing controlled substances, such as scales, funnels, sifters, grinders, glass panes and mirrors, razor blades, plastic bags, mixers, heat-sealing devices, and dilutants;

c.   Books, records, receipts, notes, ledgers, and other papers relating to the distribution of controlled substances;

    d.   Personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the distribution of controlled substances;

    e.   Cash, currency, and records relating to controlled substances income and expenditures of money and wealth, for example: money orders, wire transfers (Western Union), cashier's checks and receipts, bank statements, passbooks, checkbooks, and check registers, as well as precious metals such as gold and silver, and precious gems such as diamonds;

    f.   Documents indicating travel in interstate and foreign commerce such as travel itineraries, plane tickets, boarding passes, motel and hotel receipts, passports and visas, credit card receipts, telephone bills and rental car agreements;

    g.   Electronic devices, such as computers, and mobile electronic communication devices, such as cellular telephones and "smart phones", electronic messaging equipment, such as tablets, pagers, telephones answering machines, and their tapes, electronic storage devices, such as GPS devices and portable media players, and other such mobile electronic devices that store data, as well as the content therein;

    h.   Firearms and other dangerous weapons; and

    i.   Photographs, in particular, photographs of co-conspirators, assets, and/or drugs.

9.    In addition, during the course of such residential searches, I and other investigators have also found items of personal property that tend to identify the person(s) in the residence, as well as the occupancy, control, or ownership of the subject premises. Such identification evidence is typical of the articles people commonly maintain in their residences,

such as canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, utility and telephone bills, statements, identification documents, and keys to safe deposit boxes and storage facilities.

10.     Based upon your affiant's training and experience, as well as the knowledge and experience of other investigators and police officers involved in this investigation, I am aware that it is generally a common practice for drug traffickers to store their drug inventory and drug-related paraphernalia (as described above) in their residences.  Further, it is generally a common practice for drug traffickers to maintain in their residence's records relating to their drug trafficking activities.  Because drug traffickers in many instances will "front" (that is, sold on consignment) controlled substances to their clients, or alternatively, will be "fronted" controlled substances from their suppliers, such record-keeping is necessary to keep track of amounts paid and owed.  Such records will also be maintained close at hand so as to readily ascertain current balances. Often drug traffickers keep "pay and owe" records to show balances due for drugs sold in the past ("pay") and for payments expected ("owe") as to the trafficker's supplier and the trafficker's dealer(s). Additionally, drug traffickers must maintain telephone and address listings of clients and suppliers and keep them readily available in order to efficiently conduct their drug trafficking business.

11.     Your affiant is aware it is a generally common practice for traffickers to conceal at their residences large sums of money which represent the proceeds of drug sales or money to be used to purchase additional controlled substances.  The large amounts of U.S. currency are necessary to maintain and finance their ongoing drug distribution business.  In this connection and context, drug traffickers typically make use of wire transfers, cashier's checks and money orders to pay for controlled substances. Evidence of such financial

5

transactions and records relating to income and expenditures of money and wealth in connection with drug trafficking would also typically be maintained in residences.

12.     Your affiant is aware that drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled substances; furthermore, I know that the aforementioned books, records, receipts, notes, ledgers, etc. are generally maintained where the traffickers have easy and ready access to them, including in their residences and automobiles.

13.     Your affiant is aware that persons involved in drug trafficking conceal in their residences and automobiles, currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of drug transactions, as well as evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money derived from drug trafficking activities.

14.     Your affiant is aware that when drug traffickers amass proceeds from the sale of drugs, they often attempt to legitimize these profits, or otherwise conceal them from discovery by law enforcement officers. To accomplish these goals, drug traffickers often use different techniques, including but not limited to foreign and domestic banks and their attendant services; securities; cashier's checks; money drafts; letters of credit; brokerage houses; the purchase of real estate; as well as shell corporations and business fronts to conceal the true ownership and illegal source of the proceeds.

15.     Your affiant is aware that drug traffickers commonly maintain books or papers that reflect names, addresses and/or telephone numbers of their associates in the trafficking organization.  Also, drug traffickers take or cause to be taken photographs of them, their

associates, their property, and their product, and these photographs are usually maintained in their possession or residence.

16.     Your affiant is aware that drug traffickers usually keep paraphernalia for packaging, cutting, weighing, and distributing drugs; and the paraphernalia would include, but are not limited to scales, plastic bags, cutting agents, and other devices used for packaging to aid in the concealment of the drug for its distribution.  These items are necessary for the drug trafficker to carry on their drug distribution operation.

17.     Your affiant is aware that drug traffickers commonly have in their possession, that is, on their person or at their residence, firearms, including but not limited to pistols, revolvers, rifles, shotguns, machine guns and other weapons.  I also am aware that, typically, drug traffickers possess these firearms and other dangerous weapons to protect their profits, supply of drugs, and themselves from others who might attempt to forcibly take the traffickers' profits and/or supply of drugs.

18.     Your affiant is aware that drug traffickers often operate under assumed names, street names, or nicknames in order to conceal their true identities from law enforcement officers,  and in so doing, acquire property, services, and personal identification (such as driver's licenses and birth certificates) under their assumed or alias names.  Also, they maintain documents of their false identities in their residences and automobiles, together with evidence of their true identities.

19.     Your affiant is aware drug traffickers commonly conceal their activities from members of the public by transacting their business in a convert manner and frequently conducting their business during the nighttime hours when darkness helps conceal their activities.  Further, it is highly unusual for individuals engaged in drug trafficking activities to

7

associate in their businesses or social activities with others not engaged in the same drug trafficking activities.

20.     Your affiant is aware that it is common for drug dealers to conceal contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residence for their ready access and to conceal them from law enforcement authorities.

21.     Your affiant is aware that drug traffickers sometimes take trophy photographs of their drugs and drug proceeds and retain them in their residences.  Your Affiant is aware that drug traffickers, like law-abiding citizens, sometimes take photographs of themselves with their friends, relatives, and associates and keep the photographs in their residences. When they are taken or retained by drug traffickers, such photographs can be evidence, or can lead to evidence, of drug trafficking and money laundering by identifying closely associated people who are actively assisting and/or supporting the drug trafficking activity.

22.     Your affiant is aware that evidence of drug crimes can be found in the electronic media referenced in the preceding paragraph.  Such evidence can include telephone numbers as well as incriminating communications via emails or instant messages.  In addition, those involved in drug trafficking crimes commonly communicate using multiple cellular telephones.  Contemporaneous possession of multiple cellular telephones is, therefore, evidence of drug trafficking.  Moreover, the particular numbers of and the particular numbers dialed by particular cellular telephones can be evidence of drug trafficking, particularly in a case involving the interception of communications between drug traffickers.  Such numbers can confirm identities of particular speakers and the occurrence of certain events.   As with most electronic/digital technology items, communications made from an electronic device, such as a computer, are often saved or stored on the device.

23.     My awareness of these drug trafficking practices, as well as my knowledge of drug use and distribution techniques as set forth in this Affidavit, arise from the following:

a.   My own involvement in prior drug investigations and searches during my career as a law enforcement officer, as previously described;

b.   My involvement on a number of occasions in debriefing cooperating individuals in prior drug investigations, as well as what other agents and police officers have advised me when relating the substance of their similar debriefings and the results of their own drug investigations;

c.   Discussion with investigators, agents, and law enforcement officers, both about the facts of this case in particular and about trafficking in general;

d.   My training, experience and knowledge as well as my review of documents and evidence obtained during the investigation and information obtained from investigators of the USPIS, FBI, DEA, PSP, and HSI.

24.     I make this Affidavit in support of an application for the issuance of a search warrant for the following location:

a.   **TARGET LOCATION:** The residence, 1835 East 34th Street, Erie, Pennsylvania is described as a single-story residence with gray siding, white trim, with dark gray roof.  There are numbers on of "1835" affixed on the black mailbox atop a wooden post in front of the residence unattached from the house.  The building is located on the South side of the East 34th Street and is the 4th residence east of the intersection of Zimmerman Road and East 34th Street.  The **Target Location** is further described in **Attachment A**.

25.     The following "Target Offenses" are the subject of this investigation:

a.   Title 21 U.S.C. § 841(a) makes it a crime to manufacture, distribute, or

dispense, or possess with intent to manufacture, distribute, or dispense, a controlled

substance.

b.   Title 21 U.S.C. § 846 makes it a crime to engage in a conspiracy to commit

drug trafficking offenses.

## III.   OVERVIEW OF INVESTIGATION

26.   The FBI EAGLE Task Force has been investigating the narcotics distribution

of Supreme WILLIAMS for approximately two months.  The investigation has revealed that

WILLIAMS is a narcotics trafficker within a larger drug trafficking organization.  Evidence

has been collected using TT#2 a cellular telephone serviced by Verizon Wireless, with call

number (814) 806-0446, subscribed to Kechawn DOUGLAS and TT#4 a cellular telephone

serviced by Verizon Wireless with call number (814) 823-7531, utilized by Jamir

FELICIANO.  The intercepted communications have included conversations with (814) 651-

3015 that is used by WILLIAMS. The conversations with WILLIAMS document narcotics

related conversations and business.   WILLIAMS has been observed by investigators

conducting physical surveillance trafficking narcotics at the **Target Location**.  Evidence has

been developed that establishes WILLIAMS utilizing the **Target Location** to conduct his

narcotics trafficking business.

## IV.   PROBABLE CAUSE

27.   On March 10, 2022, the United States District Court for the Western District of

Pennsylvania, District Judge William S. Stickman IV issued an Order at Misc. Docket

Number 1:22-mc-00027(a) authorizing interception of wire communications over TT#2 on

the basis of an Affidavit filed at that same Misc. Docket Number.  Authorized interception of

wire communications began on March 10, 2022.  Kechawn DOUGLAS was previously

identified as the user or TT#2.

28.     On April 7, 2022, the United States District Court for the Western District of

Pennsylvania, District Judge Robert J. Colville issued an Order at Misc. Docket Number 1:22-

mc-00027(c) authorizing the initial interception of wire communications over TT#4 on the

basis of an Affidavit filed at that same Misc. Docket Number.  Authorized interceptions began

April 7, 2022.  Jamir FELICIANO was previously identified as the user of TT#4.

29.     On March 13, 2022, investigators, monitoring court authorized interceptions of

TT#2, recorded and transcribed the following wire communications between Kechawn

DOUGLAS utilizing TT#2 and an individual identified as Supreme WILLIAMS utilizing

(814) 651-3015.  The communications were intercepted and transcribed as follows:

 a.  At 10:01 pm, Kechawn DOUGLAS utilizing TT#2 placed an outgoing call to

Supreme WILLIAMS utilizing (814) 651-3015.  Portions of the call are transcribed as

follows:

| | |
|---|---|
| KD: | You didn't leave the house yet did you? |
| SW: | Huh? |
| KD: | You didn't leave the house yet did you? |
| SW: | Nah. |
| KD: | Oh, UI, ain't ready.  Hey Bro bring the umm, bring a quarter, a quarter down here.  (male in background says two separate eighths. |
| SW: | You on 21st too? |
| KD: | Yeah. |
| SW: | Two eighths bro. |
| KD: | Two eighths. |

 b.  Based on training, experience, knowledge of this investigation, and subsequent

intercepted communications, your affiant believes that when DOUGLAS asked

WILLIAMS to provide "*a quarter*," he was asking WILLIAMS to provide him with a quantity of a controlled substance, most likely a quarter ounce.  Electronic pole camera surveillance showed WILLIAMS arrive in a black Chevrolet Malibu registered to WILLIAMS (PA LRS-2763) at 10:17 pm in the 1200 block of East 21st Street located within the City of Erie.  DOUGLAS and WILLIAMS met briefly, consistent with a quick drug exchange, and then WILLIAMS left the area.

30.     On April 8, 2022, investigators, monitoring court authorized interceptions of TT#2, recorded and transcribed the following wire communications between Kechawn DOUGLAS utilizing TT#2 and an individual identified as Supreme WILLIAMS utilizing (814) 651-3015.  The communications were intercepted and transcribed as follows:

a.  At 1:06 pm, Kechawn DOUGLAS utilizing TT#2 placed an outgoing call to Supreme WILLIAMS utilizing (814) 651-3015.  Portions of the call are transcribed as follows:

| | | |
|---|---|---|
| SW: | Yo. | |
| KD: | Can I get a quarter buddy? | |
| SW: | Yeah. | |
| KD: | Shit, where you at? | |
| SW: | Uh, shit, I'm, I'm finnin to be at the crib. | |
| KD: | Alright. I'll be there in 15 minutes. | |
| SW: | Alright bet. | |

b.  Based on training, experience, knowledge of this investigation, and subsequent intercepted communications, your affiant believes that when DOUGLAS asked WILLIAMS to provide "*a quarter*," he was asking WILLIAMS to provide him with a quantity of a controlled substance, most likely a quarter ounce.  Investigators traveled to the **Target Location** to establish physical surveillance and observed a white Range Rover

SUV (PA LSE-3529), registered to DOUGLAS, is parked in front of the **Target Location** with DOUGLAS as the operator.

       c.    At 1:21 pm, Kechawn DOUGLAS utilizing TT#2 placed an outgoing call to Supreme WILLIAMS utilizing (814) 651-3015.  Portions of the call are transcribed as follows:

> SW:    Yo.
> KD:    UI.
> SW:    You said what?
> KD:    Where you at?
> SW:    Uh shit, I'm pullin up to my crib now.
> KD:    Alright, I'm here.
> SW:    Alright bet.

       d.    Investigators conducting physical surveillance observed WILLIAMS arrive in a black Chevrolet Malibu registered to WILLIAMS (PA LRS-2763) at 1:22 pm and park at the **Target Location** driveway. WILLIAMS exited the vehicle carrying a large white bag and entered the **Target Location**.  Shortly afterward WILLIAMS exited the **Target Location** and entered into the front passenger seat of the white Range Rover SUV with DOUGLAS as the operator.  A brief meeting between DOUGLAS and WILLIAMS occurred and WILLIAMS exited the white Range Rover and reentered the **Target Location**.

       31.    On April 9, 2022, investigators, monitoring court authorized interceptions of TT#4, recorded and transcribed the following wire communications between Jamir FELICIANO utilizing TT#4 and an individual identified as Supreme WILLIAMS utilizing (814) 651-3015.  The communications were intercepted and transcribed as follows:

       a.    At 10:00 pm, Jamir FELICIANO utilizing TT#4 placed an outgoing call to

Supreme WILLIAMS utilizing (814) 651-3015.  Portions of the call are transcribed as follows:

> JF:     UI, Yo, you out here?
> SW:     Yeah.
> JF:     Trying to pull up with a seven?
> SW:     Yeah.  Where you at, the crib?
> JF:     I'm on 21st.
> SW:     Alright bet.

    b.  Based on training, experience, knowledge of this investigation, and subsequent intercepted communications, your affiant believes that when FELICIANO asked WILLIAMS if he "*trying to pull up with a seven*," he was asking WILLIAMS to provide him with a quantity of a controlled substance, possibly seven ounces or seven grams (seven grams would equate roughly to a quarter ounce, a common unit of measurement in drug transactions).  Investigators monitoring electronic surveillance observed WILLIAMS operating his black Chevrolet Malibu (PA LRS-2763) and pull into the 1200 block of East 21st Street.  WILLIAMS exited his vehicle and entered a silver Chevrolet Tahoe (PA LWS-5496) operated by FELICIANO.  Investigators have identified the 1200 block of East 21st Street, specifically the area near and to include 1231 East 21st Street, as a highly trafficked narcotics distribution point, where numerous exchanges of narcotics have occurred as viewed through court authorized electronic surveillance.

    32.   On April 14, 2022, investigators, monitoring court authorized interceptions of TT#4, recorded and transcribed the following wire communications between Jamir FELICIANO utilizing TT#4 and an individual identified as Supreme WILLIAMS utilizing (814) 651-3015.  The communications were intercepted and transcribed as follows:

    a.  At 9:54 pm, Jamir FELICIANO utilizing TT#4 placed an outgoing call to

Supreme WILLIAMS utilizing (814) 651-3015.  Portions of the call are transcribed as follows:

> SW:   I'm at the crib.
>
> JF:   Oh you ain't in traffic?
>
> SW:   Shit, I can be.
>
> JF:   You tryin to pull up to the Terrace?
>
> SW:   Yeah, I'll pull up.  Whatchu wanted?
>
> JF:   Uh, seven.
>
> SW:   Alright, alright bet.  Uh, what, what, what part chu at?
>
> JF:   Alright, just pull up.  Imma, UI, call me when you out there.  I'mma be by, UI, I'm by the park for real though.
>
> SW:   Alright bet.

b. Based on training, experience, knowledge of this investigation, and subsequent intercepted communications, your affiant believes that when WILLIAMS stated he was "*at the crib*," he was indicating he was at his residence, likely the **Target Location**. WILLIAMS asked FELICIANO, "*whatchu want*," he was asking FELICIANO for an exact amount of a controlled substance he wanted. FELICIANO reply of, "*uh seven*," referred to seven ounces or seven grams of a controlled substance.

33.   On April 25, 2022, investigators, monitoring court authorized interceptions of TT#2, recorded and transcribed the following wire communications between Kechawn DOUGLAS utilizing TT#2 and an individual identified as Supreme WILLIAMS utilizing (814) 651-3015.  The communications were intercepted and transcribed as follows:

a. At 11:03 pm, Kechawn DOUGLAS utilizing TT#2 placed an outgoing call to Supreme WILLIAMS utilizing (814) 651-3015.  Portions of the call are transcribed as follows:

> KD:   Yo.

> SW:   Yo.
>
> KD:   You got some I's around?
>
> SW:   Yeah.
>
> KD:   Let me come grab a quarter.
>
> SW:   Alright.
>
> KD:   Be at the spot.
>
> SW:   Yeah.
>
> KD:   Alright.  I'll probably be there in like fifteen, twenty.

b.   Based on training, experience, knowledge of this investigation, and subsequent intercepted communications, your affiant believes that when DOUGLAS asked WILLIAMS to provide "*a quarter*," he was asking WILLIAMS to provide him with a quantity of a controlled substance, likely a quarter ounce, and asked for "*I's*," a common term for methamphetamine.

c.   At 11:24 pm, Kechawn DOUGLAS utilizing TT#2 placed an outgoing call to Supreme WILLIAMS utilizing (814) 651-3015.  Portions of the call are transcribed as follows:

> SW:   Yo.
>
> KD:   Yo, I'm outside bro.

d.   At 11:24 pm investigators did utilize electronic surveillance mapping capabilities on the vehicle of DOUGLAS, a white Range Rover SUV (PA LSE-3529.) Investigators were able to determine that the white Range Rover SUV (PA LSE-3529) was parked outside of the **Target Location**.

34.   In April of 2022, Investigators have observed and identified WILLIAMS in possession of a large amount of currency, high-end precious metals, and displayed through various social media posts to include videos. The large amount of currency and high-end

precious metals are consistent with narcotics trafficking proceeds.  WILLIAMS is also currently unemployed.

35.     Surveillance of WILLIAMS has routinely observed him at the **Target Location**.  It appears that WILLIAMS continues to spend most nights at the **Target Location**.  Several vehicles registered to WILLIAMS are also parked in the driveway and in front of the **Target Location**.

36.     Based on the above described intercepted communications and law enforcement surveillance, your affiant would submit that there is probable cause to conclude that Supreme WILLIAMS is utilizing the residence at 1835 East 34th Street, Erie, Pennsylvania to store and distribute controlled substances and that a search of the **Target Location** is likely to reveal evidence of these crimes more fully described in Attachment B.

### V.     CONCLUSION

37.     Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) and 846 have been committed by the user(s) of the **Target Location**.

38.     WHEREFORE, I request that the Court issued the proposed search warrant for 1835 East 34th Street, Erie, Pennsylvania, curtilage, and any vehicles present, (**Target Location**) as there is probable cause to believe that there is currently evidence of a crime, more fully described in Attachment B, located at the above residence, curtilage, and vehicles.

The above information is true and correct to the best of my knowledge, information, and belief.

*s/ Valentino Cuba*
Valentino Cuba
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me
this _____ day of May 2022


_____
HON. RICHARD A. LANZILLO
United States Magistrate Judge